### IN THE UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

| | |
|---|---|
| JOHN DOE,<br><br>      Plaintiff,<br><br>  v.<br><br>INDIANA UNIVERSITY, PROVOST LAUREN ROBEL, KATHY ADAMS-REISTER, LIBBY SPOTTS, ROBERT BILLINGHAM, MICHAEL COURTNEY AND GRANT VOGTMAN,<br><br><br>      Defendants. | CASE NO. 1:20-CV-123-JRS-DML<br><br><br>**MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR EXPEDITED DISCOVERY** |

Plaintiff John Doe ("John"), by and through his attorney, Eric J. Rosenberg, opposes defendants' Motion for Expedited Discovery. Dkt. 18.

### BACKGROUND

At the January 15 scheduling conference following John Doe's filing of his Motion for TRO, ECF 1, the Court declined to schedule an immediate TRO hearing and instead set the TRO hearing for February 11 to allow defendants an opportunity to prepare and submit responsive briefing. In anticipation that the Court would entertain his TRO Motion shortly after filing, John had submitted a Motion for Expedited Discovery, assuming that if the TRO were granted, the

Court would then schedule the matter for a preliminary injunction hearing in the following weeks.[1]

The preliminary injunction hearing would be the time and place for the parties to present relevant

testimony or other documentary evidence. Because the TRO hearing is set for February 11, and

there is no Rule 65(a) hearing scheduled, John filed a Notice of Withdrawal of Motion for

Expedited Hearing. Dkt. 16.[2] Discovery is not necessary for the Court to address and rule on the

legal merit of John's TRO Motion. The Court can and should rule on John's motion based on the

legal arguments therein and with reference to the allegations contained in the Verified Complaint.

## LAW AND ARGUMENT

**I.      Expedited Discovery, When Granted, Follows a Ruling on a Motion for TRO, It Is Not Granted Before the TRO Hearing.**

Defendants' motion is untimely and at best premature. As the case is currently postured,

there is no basis nor any need to move forward with expedited discovery. In most—if not all—

cases, discovery is potentially warranted *after* a TRO has been granted. Standard practice in the

Seventh Circuit and in this Court is that expedited discovery follows a ruling on the plaintiff's

TRO motion and will be used in preparation for a preliminary injunction hearing. This was the

course of events in *H-D Michigan, LLC v. Hellenic Duty Free Shops S.A.*, 694 F.3d 827 (7th Cir.

2012). Plaintiff moved for a TRO against defendant, a foreign entity in August 2011. One month

later the district court granted it. In October, the court continued the TRO for another month, at

which time defendant requested time to conduct discovery and to prepare for the December

preliminary injunction hearing.

---

[1]John moved for issuance of a Rule 65(b) TRO so that he could maintain a record of continuous enrollment at Indiana University and to avoid the harm resulting from an unusual and unexpected "gap" in his studies. When John filed his TRO Motion, IU classes had just started the preceding day. John, who had already enrolled and registered for Winter term classes, could have begun the Winter term classes and thereby avoid the injury to his academic record that results from a lack of continuous enrollment.
[2]The Court has since approved John's Notice of Withdrawal of Motion for Expedited Discovery. Dkt. 21.

Likewise, in *People for the Ethical Treatment of Animals, Inc. (PETA) v. Wildlife in Need and Wildlife in Deed, Inc.*, No. 17-CV-00186, 2018 WL 828461, at *1 (Feb. 12, 2018), this Court issued a temporary restraining order on October 4, 2017, the plaintiff (PETA) then filed a motion for preliminary injunction two months later, on December 19, 2018. The next month, on January 24, 2019, a hearing was conducted "in which the court heard evidence and argument." *Id*. The Court in *PETA* stated specifically that it was "[a]fter the court granted Plaintiff's TRO, [that] Defendants produced very little discovery." *Id*. Similarly, in the case cited by defendants, *Roche Diagnostics Corp. v. Med. Automation Sys., Inc.*, No. 10-CV-01718, 2011 WL 1300098, at *3 (S.D. Ind. Jan. 14, 2011), this Court addressed the reasonableness of expedited discovery only ***after*** the Court had issued a TRO and in the context of an impending preliminary injunction hearing. *Accord Eppley, MD v. Iacovelli*, No. 09-CV-386, 2010 WL 724557, at *1 (S.D. Ind. Feb. 25, 2010) (granting plaintiff a TRO, extending it, and then after an evidentiary hearing converted the TRO to a preliminary injunction).

This Court's practice of granting motions for discovery after a TRO hearing is consistent with its Seventh Circuit sister courts. *See*, *e.g.*, *American Family Mut. Ins. Co. v. Roth*, No. 05-C-3839, 2005 WL 3700232, at *1 (N.D. Ill. Aug. 5, 2005); *Hall v. Nat'l Collegiate Athletic Ass'n*, 985 F. Supp. 782 (N.D. Ill. 1997); *Geneva Assur. Syndicate Inc. v. Med. Emergency Serv. Associates*, No. 92-C- 1652, 1993 WL 384566, at *1 (N.D. Ill. Sept. 26, 1993). Yet even when a TRO is granted, it not a guarantee that expedited discovery will be granted. *Integrity Trade Services v. Integrity Empl. Partners*, 15-CV-205, 2015 WL 10934322, at *3 (N.D. Ill. May 20, 2015) (granting ex parte TRO but denying plaintiff's request for expedited discovery to allow defendants an opportunity to obtain counsel).

The foregoing cases illustrate that discovery may be warranted after the court has addressed the merits of a plaintiff's motion for temporary restraining order and in advance of a preliminary injunction hearing but not before. Because this Court has scheduled ruling on John's TRO Motion for February 11, there is no reason to grant discovery at this time. The Court will rule on John's Motion based on the legal arguments contained therein. Discovery is not necessary to answer the question of whether John is entitled to the very temporary and limited relief that a TRO offers.

## II.     Even Assuming Discovery is Appropriate for the February 11 Hearing, Defendants′ Requests are Unreasonable and Unrelated to the Issue Presented.

Even assuming this Court determines it is appropriate to permit discovery before it has ruled on the merits of John's TRO Motion, the discovery sought should not be allowed because the request is overbroad and unrelated to the issues before the Court. Put simply, defendants' requests are unreasonable. Expedited discovery is impermissible "if the requests are not 'narrowly tailored' with reasonable boundaries." *Roche Diagnostics*, 2011 WL 130098, at *3 (quoting *Philadelphia Newspapers, Inc. v. Gannett Satellite Info. Network*, 1998 WL 404820, at *2 (E.D. Pa. July 15, 1998)). "[A]s in all cases, deciding whether to permit expedited discovery and the scope of any expedited discovery depends on the facts and circumstances of the particular matter, and a demonstration why the requested discovery, on an expedited basis, is appropriate for the fair adjudication of issues before the court." *Id*. *Accord Orlando v. CFS Bancorp, Inc*., 2013 WL 12329547, at *1 (N.D. Ind. Oct. 10, 2013) (quoting *Roche Diagnostics*).

Even assuming the forthcoming hearing were a preliminary injunction hearing—which it is not—the discovery defendants propound goes beyond that which is relevant to the issues before this Court and can only be perceived as an effort to harass and intimidate and to press John indirectly into foregoing his legitimate claim against the University. Specifically, defendants seek to inquire of both John and his sister ("KS") about the complainants' allegation of sexual

misconduct on the Fourth of July. We know this because defendants' Request for Production No. 1 asks John for "communications, including emails, text messages, and/or social media messages, between you and your sister, K.S. from July 4, 2019 to present regarding Complainant, the Incident, the Hearing, and/or the allegations in the Complaint." Dkt. 18-1 at 4. By defendants' definition, "the Incident" refers to "the events that occurred on July 4, 2019 between John Doe and Complainant." *Id*. at 2. Similarly, in Request for Production No. 5, defendants ask for "all documents written, created, or prepared by John Doe . . . from July 4, 2019 to present that relate in any way to the allegations in the Complaint." Dkt. 18-1 at 5.

The merits of John's Complaint, however, do not turn on the events of July 4, 2019. The question before the Court as presented in John's Motion for TRO is whether John received a fair and proper hearing on November 15, 2019, one that met the fundamental requirement of due process. The hearing record is complete: John testified, KS testified, the hearing commissioners examined John and KS and the commissioners presumably considered the weight of the information contained in John's case file before finding him responsible for sexual misconduct. Notably, defendants have full access to the underlying administrative record, including the audio recording of the testimony. John does not.

The gravamen of John's Verified Complaint is that based on the complete record below defendants conducted a sham disciplinary hearing in violation of the dictates of *Doe v. Purdue Univ*., 928 F.3d 652 (7th Cir. 2019).[3] More precisely, the question is whether it was proper for IU to suspend John when it (i) failed to conduct an independent investigation; (ii) disregarded the only evidence presented, which was exculpatory; (ii) rendered a decision of guilt based solely on the fact of an arrest and where the allegation of wrongdoing is controverted. There is no testimony

---

[3]*See generally* Plaintiff's Memorandum in Support of Motion for TRO at 11-20. ECF 1.

PAGE 5—PLAINTIFF'S MEMO  IN OPPOSITION TO MOTION FOR EXPEDITED DISCOVERY

that John or KS can offer that answers these legal questions. John has already offered his statement to the hearing commissioners in person, asserted his innocence and explained how it was not possible that he committed any wrongdoing. KS corroborated his testimony. The hearing record is complete and it is based on this record that defendants found him responsible for misconduct. It is likewise based on this closed record that the district court must evaluate whether IU provided John with the requisite due process that meets the *Purdue* standard.

Essentially, defendants are seeking a daylong deposition of John and a half-day deposition of KS to harass and intimidate John and pressure him to forego this litigation because of the pending criminal case. Defendants are also seeking to redo the disciplinary hearing. Presumably, defendants want to open and supplement the record because they recognize the preponderance of evidence did not support a finding of guilt. In other words, they are aware that it was wrong to find John guilty based on nothing more than a probable cause charge. Defendants expect that an extended cross-examination of John and KS, by skilled trial lawyers, will somehow fill the gaping hole in their flawed hearing because notwithstanding John's assertion of innocence, and despite the presumption of innocence to which John is entitled, they are convinced of his guilt. But defendants' unfavorable opinion of John is of no consequence. What matters is whether John's hearing satisfied the minimum standards of due process to render a just outcome.

As noted above, defendants also seek testimony and documents from KS. Again, the information sought has no bearing on whether the University conducted a procedurally deficient hearing. KS has no connection to Indiana University nor did she communicate before or after the hearing with any of the defendants. KS simply showed up at the hearing, provided testimony and left. There is nothing she could offer that has any bearing on the manner in which IU conducted its disciplinary hearing. Stating the obvious, KS cannot address whether IU (a) followed its rules;

(b) conducted a proper investigation; (c) improperly denied John the right to confront or answer his accuser; or (d) made erroneous credibility findings. These are factual questions answered based on the closed hearing record or legal questions based on what the law says IU is obligated to do when conducting disciplinary hearings. Accordingly, defendants' request for discovery from John and KS is neither "relevant to any party's claim or defense" and is not "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

Defendants request for discovery is also misguided because it assumes that defendants can reopen the administrative record below and add new information in an effort to correct the underlying deficiencies. Defendants would like to gather more evidence to support a flawed finding of guilt and thereby ignore the essential deficiencies of process. Essentially, defendants are seeking a trial de novo, which is impermissible. As the Seventh Circuit admonished, "reviewing courts must be careful when determining whether to allow additional evidence that they do not change the character of the hearings in such cases from reviews of administrative proceedings to trials de novo. *Monticello Sch. Dist. No. 25 v. George L.*, 102 F.3d 893, 901 (7th Cir. 1996). In *Citizens for Appropriate Rural Roads, Inc*. v. *LaHood*, No. 11-CV-1031-SEB-DML, 2012 WL 442747, *4 (S.D. Ind. Feb. 10, 2012), for example, this Court rejected plaintiffs' effort to supplement the administrative record with post-hearing proffered photographic and declaratory evidence unless plaintiffs demonstrated they had "moved to supplement or reopen the record, or that deficient agency procedures prevented this evidence from reaching agency decisionmakers." *Id*. In other words, plaintiffs could not add new evidence to the record below when appealing their case to the district court. This Court correctly observed that when the matter at issue involves "an impeachable administrative process," then only extrinsic evidence "relevant to [the district court's] forthcoming hearing which shows Defendants' bad faith or faulty procedures in the administrative

process will be admissible." *Id*. The same holds true in John's case. Again, there is no information

John or KS can provide that goes to the heart of the issue here: IU's deficient process. If defendants

concede there were errors below, if they acknowledge that the information relied on does not meet

the standard laid out in *Purdue*, then the answer is to reinstate John and conduct a new hearing

with all the procedural protections and rights to which he is entitled. On the other hand, if

defendants are confident that the underlying proceeding was proper in all respects, then they should

defend the record developed below. IU can defend its "faulty procedures," *id*., by calling its own

witnesses: those persons who manage, direct, conduct and ratify its Title IX and student conduct

disciplinary procedures and process. These are the persons with the relevant evidence.

Defendants maintain their requests are "narrowly tailored" and thus should be allowed. Not

so. Defendants intend to question John about the specific *incident* for which he is indicted. Again,

there is no information that John can provide that answers the central legal questions presented

about the propriety of the hearing—these are questions that can and should be answered by

reference to the specific circumstances of the hearing IU conducted and whether it met the *Purdue*

standard for due process. Put simply, the discovery defendants seek is irrelevant to the issue

presented and defendants' bald assertion that the discovery will be helpful to the Court is

erroneous. Because defendants are not entitled to reopen the record and because the information

sought is irrelevant, John can only presume that defendants seek to depose him for an entire day

for the improper purpose of harassment and intimidation.[4]

If forced to sit for examination, however, John would invoke his constitutional right not to

be a witness against himself. The Fifth Amendment "not only protects the individual against being

involuntarily called as a witness against himself in a criminal prosecution but also privileges him

---

[4]Further, it is altogether possible that defendants are coordinating with the prosecutor and intend to share any testimony obtained in this case for use against him in his criminal case.

PAGE 8—PLAINTIFF'S MEMO IN OPPOSITION TO MOTION FOR EXPEDITED DISCOVERY

not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings." *Baxter v. Palmigiano*, 425 U.S. 308, 317 (1976) (quoting *Lefkowitz v. Turley*, 414 U.S. 70, 77 (1973)). Importantly, John would invoke his Fifth Amendment right not to conceal his guilt but because he firmly and steadfastly asserts his innocence. The Supreme Court has long recognized and emphasized that "one of the basic functions of the privilege is to protect innocent men . . . who otherwise might be ensnared by ambiguous circumstances.'" *Grunewald v. United States*, 353 U.S. 391, 421 (1957) (internal quotations omitted). Commenting further, the Court observed that "[t]oo many, even those who should be better advised, view this privilege as a shelter for wrongdoers. They too readily assume that those who invoke it are either guilty of crime or commit perjury in claiming the privilege." *Id*. John will not—and cannot—offer further testimony while his criminal case is pending precisely because "truthful responses of an ***innocent*** witness, as well as those of a wrongdoer, may provide the government with incriminating evidence from the speaker's own mouth." *Ohio v. Reiner*, 532 U.S. 17, 21 (2001) (reaffirming principle in *Grunewald*, 353 U.S. at 421-422) (emphasis added).

## CONCLUSION

There is no basis to grant discovery at this time. The Court has yet to rule on John's pending Motion for TRO. After the February 11 hearing would be the time to consider any motions for expedited discovery, if needed, for purposes of a possible preliminary injunction hearing. At that time, not before, the Court should determine the propriety and scope of any expedited discovery "with reference to the burden [the parties] will bear at the preliminary injunction hearing." *Roche Diagnostics*, 2011 WL 130098, at *4. As shown above, however, the claims in this case offer no basis to grant the discovery defendants seek because testimony and documents

about "the incident" are wholly irrelevant to the matter at issue. What is relevant is the propriety

of defendants' conduct and whether defendants met the basic standards of due process as required

under the Fourteenth Amendment and Title IX. For these reasons, defendants' motion for

expedited discovery should be denied.

<div style="margin-left: 45%;">

Respectfully submitted,

/s/ *Eric J. Rosenberg*

Eric J. Rosenberg (0069958)
395 North Pearl Street
Granville, Ohio 43023
740.644.1027 phone
erosenberg@rosenbergball.com

</div>