United States District Court
Southern District of Indiana
Indianapolis Division

JOHN DOE,

    *Plaintiff*,

v.                                              Case No. 1:20-cv-00123-JRS-DML

THE TRUSTEES OF INDIANA UNIVERSITY, et al.

    *Defendants*.

## DEFENDANTS' RESPONSE TO PLAINTIFF'S SUPPLEMENTAL AUTHORITY

The University,[1] responds to Plaintiff's supplemental authority (DE #50) as follows.

The recent decision by the Northern District of Indiana in *Doe v. Purdue Univ.*, Cause No. 4:19-cv-56-TLS-JPK (herein, *Purdue Univ. II* to distinguish it from *Doe v. Purdue Univ.*, 928 F.3d 652 (7th Cir. 2019) (*Purdue Univ. I*)) does not change this Court's analysis. Plaintiff's Amended Complaint should be dismissed with prejudice.

### A. The Liberty Interest Issue

The Court in *Purdue Univ. II* found the plaintiff had pleaded a liberty interest (via a stigma plus claim) because he alleged in his amended complaint that he had chosen an occupation (attorney or a financial professional) and "these occupations trigger a legal obligation to disclose the disciplinary proceedings to graduate schools and licensing boards." (DE #50-1 p. 16.)

(1)    *In contrast to Purdue Univ. II, Plaintiff here has no chosen occupation.*

Although Plaintiff's supplement cites to his motion to dismiss response brief (*see* DE #50 p. 2 (*citing* DE #48)), his actual amended complaint contains no allegation of a chosen occupation. His amended complaint alleges only that he wanted to obtain an MBA degree. (DE #43 ¶ 44.) He alleged that "colleges and universities" might not accept him with his disciplinary

---

[1] Unless otherwise specified, "the University" is shorthand for all defendants, collectively.

record. (*Id.* ¶ 108.) And he alleged that this "compromised" his "ability and plans to pursue an undergraduate and graduate degrees." (*Id.* ¶ 109.) Plaintiff has alleged only that he will have difficulty pursuing *educational* goals, but this Circuit does not recognize "educational liberty" as a valid interest implicating the due process clause.

The *Purdue Univ. II* plaintiff's chosen occupations are notable for another reason. As the opinion reflects, attorneys and financial professionals have professional licensing boards. (DE #50-1 p. 16.) Thus, it might be conceivable that the *Purdue Univ. II* plaintiff would be compelled by law to eventually authorize disclosure of his disciplinary record while pursuing those occupations. Of course, since Plaintiff here has not pleaded a chosen occupation whatsoever, no such concerns exist.

*Purdue Univ. II* also did not address Plaintiff's situation here, where he has alleged and therefore admitted that he voluntarily spread information that could be stigmatizing about himself (what the Seventh Circuit in *Purdue Univ.*, 928 F.3d at 661 called "a plaintiff … himself spill[ing] the beans"). (*See* DE #49 p. 3–4.) Thus, insofar as *Purdue Univ. II* accurately decided the "stigma plus" and "liberty interest" issues, Plaintiff's Amended Complaint here should still be dismissed with prejudice.

(2) *In addition, Purdue Univ. II departs from the Seventh Circuit's "stigma plus" law.*

Even though Plaintiff's allegations are distinguishable from the allegations in *Purdue Univ. II*, the University respectfully contends that *Purdue Univ. II* significantly departs from Seventh Circuit case law on the contours of a stigma plus claim. As previously briefed, that body of case law has repeatedly stressed that the plaintiff must show a "*tangible* loss of employment opportunities," one that is more concrete than a "reduction in an individual's attractiveness to potential employers." (See DE #49 p. 5–7.) Indeed, the Seventh Circuit has issued explicit holdings

that confirm that a stigma plus claim fails without a "tangible loss of employment opportunities." *Townsend v. Vallas*, 256 F.3d 661, 670 (7th Cir. 2001).

The *Purdue Univ. II* non-binding opinion does not cite or discuss any of this well-developed Seventh Circuit case law; the words "tangible loss" or "tangible loss of employment opportunities" do not occur in the opinion. In fairness to that Court, however, it appears that the issue was not raised or argued by either of the parties in their Rule 12 briefing.

By contrast, the Seventh Circuit's binding decision in *Purdue Univ. I*, 928 F.3d 652, *does* rely on this body of law, including *Townsend* (the case that explicitly confirmed that a "tangible loss of employment opportunities" is a necessary component of a stigma plus claim). (See DE #49 p. 5–6.) The plaintiff in *Purdue Univ. I* could allege this required element of a "tangible loss of employment opportunities" because Purdue forced him to disclose its disciplinary action to the employer where he'd already started his career of choice, the Navy. 928 F.3d 656–62. In contrast, the prospect of perhaps starting a law *or* professional finance career 7–8 years in the future, after perhaps completing graduate school, would *not* qualify as a "tangible loss of employment opportunities." Thus, the Court in *Purdue Univ.* should have applied *Townsend*, 256 F.3d at 670, to find that the plaintiff did not adequately allege a stigma-plus claim.[2]

In any event, for the reasons described in (1) above, Plaintiff cannot meet even the expanded test represented in *Purdue Univ. II* because he has not alleged *any* chosen occupation.

## B. The Due Process Issue

Aside from the threshold issue of *whether* there is a liberty interest that implicates the Due Process clause, the second question for the Court is whether that interest was taken without due process of law. *Charleston v. Bd. of Trs. Of Univ. of Ill. at Chicago*, 741 F.3d 769, 772 (7th

---

[2] If plaintiffs are permitted to state a stigma plus claim based on the unprovable assertion that they have a "chosen occupation," relying on the notion that *years* in the future they might start a brand new career, it would expand the doctrine beyond any meaningful or determinate limits. It would certainly expand the doctrine far beyond its application in *Doe v. Purdue Univ.*, 928 F.3d 652 (7th Cir. 2019) or any other Seventh Circuit stigma plus case.

Cir. 2013). On that second question, *Purdue Univ. II* provides further support for the University's motion to dismiss.

That case involved a dispute between two Purdue University students—there is no mention of a pending criminal case, a minor victim whose anonymity is protected by state law, or of a no-contact order protecting the minor victim's safety and privacy. (*See generally*, DE # 50-1.) After the female student accused that plaintiff (herein, "Purdue John II," to distinguish from the plaintiff in the Seventh Circuit case) of sexual assault, Purdue began investigating. The administrators refused to let Purdue John II see security camera film that would have undermined the accuser's story. (*Id.* p. 4.) They also refused to let him review the evidence they collected, like the audio recordings of interviews with the accuser or other witnesses. (*Id.*)

The administrators issued a "Preliminary Report," which they initially refused to let Purdue John II review. (*Id.*) Purdue John II eventually obtained access to that report, took handwritten notes, and submitted a response. But the administrators then compiled that information into a "Concealed Report" for use by the Panel of Adjudicators (the analog of the "Commissioners" at Indiana University), and Purdue never let Purdue John review this "Concealed Report." (*Id.* p. 5.)

At the subsequent hearing, Purdue did not reveal the results of its largely secret investigation; rather, Purdue John II was told that he was there only for "clarifications on any questions we might have after having reviewed the written materials." (*Id.* p. 5–6.) At the hearing, Purdue John II was not allowed to hear his accuser's testimony, and likewise was not permitted to hear the testimony of the administrators who conducted the investigation. (*Id.* p. 6.)

While finding that Purdue John II had stated a due process claim, Judge Springmann honed in on Purdue's decision to withhold its evidence.

> In this case, the Defendants prohibited the Plaintiff from accessing the physical evidence that Defendants Wright and Rooze collected. For example, the Plaintiff

> was prohibited from accessing the audio recordings of the interviews conducted by Defendants Wright and Rooze. The Plaintiff was also denied access to security camera footage which would have undermined the testimony of Jane Roe. Critically, the Plaintiff was also prohibited from reviewing the Concealed Report that was submitted to the Panel. The Panel relied upon the Concealed Report when finding that the Plaintiff violated university policy. Because the Defendants withheld evidence they used to find the Plaintiff guilty of violating university policy, the disciplinary process was fundamentally unfair. *See Doe*, 928 F.3d at 663. Accordingly, the Plaintiff has stated a claim for a procedural due process violation.

(DE #50-1 p. 18 (internal citations omitted).)

Plaintiff has no such allegations here. The University did not conduct a secret investigation, did not prohibit Plaintiff from accessing any evidence, and did not produce a secret document for the Adjudicators (or Commissioners) to consider while preventing Plaintiff from seeing or addressing that secret document. Aside from Plaintiff's conclusory allegations that his Hearing was a "sham," the operative facts he alleges show that (i) the University informed him of all of the evidence it was considering; (ii) allowed him to present every witness he asked to present; and (iii) listened and asked questions for "approximately two hours." Plaintiff's purported due process claim here has nothing in common with Purdue John II's.

Accordingly, even if this Court found that *Purdue Univ. II* provides Plaintiff support regarding his threshold burden of alleging a protectable liberty interest, *Purdue Univ. II* still shows that Plaintiff has not alleged that the University deprived him of that interest without due process of law.

WHEREFORE, Plaintiff's amended complaint should be dismissed with prejudice.

Respectfully submitted,

*/s/ Tracy N. Betz*
Michael C. Terrell, Atty. # 2124-49
Tracy N. Betz, Atty. # 24800-53
Vivek R. Hadley, Atty. # 32620-53
Taft Stettinius & Hollister LLP
One Indiana Square, Suite 3500
Indianapolis, IN 46204-2023
(317) 713-3500
(317) 713-3699 (fax)
mterrell@taftlaw.com
tbetz@taftlaw.com
vhadley@taftlaw.com
*Attorneys for Defendants*