**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | |
|---|---|
| JOHN DOE,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>THE TRUSTEES OF INDIANA UNIVERSITY, PROVOST LAUREN ROBEL, LIBBY SPOTTS, ROBERT BILLINGHAM, MICHAEL COURTNEY AND GRAHAM VOGTMAN,<br><br>　　　　Defendants. | CASE NO. 1:20-CV-123-JRS-MG<br><br><br>**RESPONSE TO DEFENDANTS' MOTION TO STRIKE EVIDENCE (ECF NO. 76)** |

INTRODUCTION

Defendants' wrongly and unfairly suggests that plaintiff John Doe ("John") submitted his declaration in an effort to create a question of fact regarding Spotts' declaration. Nothing could be further from the truth. John submitted a declaration simply to ensure that predicate facts—facts contained in John's verified complaint—were part of the record. On learning the Court intended to convert defendants' Motion to Dismiss Second Amended Complaint to a motion for summary judgment, we determined it necessary to ensure that certain allegations set forth in John's complaint were properly before the Court as evidence. Indeed, as defendants themselves recognize, a party cannot rely on his own pleading for purposes of summary judgment. Accordingly, John prepared a short narrative of the salient facts that ultimately lead to the Spotts declaration for purposes of contextualizing the statements in her declaration. Because the Spotts declaration does not exist in a vacuum and because the Court will not rely on allegations in his complaint, it was incumbent on him

to ensure that certain predicate facts are entered in the record. Put simply, John's declaration provides the factual history (or predicate) that leads directly the Spotts' declaration—a declaration that focuses on two central points: (1) Indiana University ("IU") did not share the substance or contents of John's disciplinary file with Purdue University, and (2) IU sent a copy of John's transcript with a suspension notation to Purdue.[1] For this reason, and no other, John affirms under oath information alleged in his complaint--information that bears on the ultimate question before the Court: Whether John has a protected liberty interest that IU violated when it sent to Purdue a copy of his transcript with the disciplinary suspension notation.

Even though the Court might not rely on all the details contained in John's declaration, because it will be converting defendants' motion to dismiss into a motion for summary judgment, it was critical that John lay the foundation for Spotts' declaration. For example, John knows well that the question before the Court does not turn on his factual innocence. As defendants point out, he himself has said as much. John simply reaffirms under penalty of perjury that which he has alleged in his complaint, which includes the fact that John challenges IU's disciplinary proceeding (and the erroneous finding of responsibility) because he is innocent. Though this does not bear directly on the question before the Court, were it not for his continued assertion of innocence, he would not be defending his right to procedural due process and there would be no Spotts declaration. And though IU rejects John's assertion of innocence (which it must, if it is to stand by its erroneous disciplinary finding), the undisputed fact is that *John* has always claimed his innocence and will continue to do so.[2]

---

[1] To be clear, defendants wrongly claim, at page 2 of their motion to strike, that "IU never sent Doe's disciplinary record or **disciplinary finding** to Purdue. . . ." John accepts for purposes of this motion that IU did not send the substance or contents of his disciplinary record to Purdue. IU did, however, share the disciplinary finding with Purdue by way of the suspension notation on his transcript. IU's claim to the contrary is incorrect.

[2] Defendants suggest that John's assertion of innocence is disingenuous because he stated early on (in opposition to a motion for expedited discovery) that he would assert his Fifth Amendment right if deposed. John took that position, which he was well within his rights to do, when there was a pending criminal charge. Since then, circumstances have changed dramatically: the state prosecutor dismissed the criminal case against

PAGE 2—RESPONSE TO DEFENDANTS' MOTION TO STRIKE EVIDENCE

Importantly, John does not present his assertion of innocence as an "undisputed fact" for purposes of summary judgment. Rather, he offers it only as part of the narrative that has led to this litigation and to underscore that he pursues his claim against IU in good faith.[3]

### RESPONSE TO CLAIMS OF INADMISSIBLE EVIDENCE IN JOHN DOE'S DECLARATION

*Paragraph 5, n. 1*: "I am to be treated as if I had never been arrested and charged with an offense."

Contrary to defendants' claim, John's statement is admissible "because a district court can always rely on public statutes. *See* Fed. R. Evid. 201; *see also Newcomb v. Brennan, 558* F.2d 825, 829 (7th Cir. 1977) ("matters of public record such as state statutes, city charters, and city ordinances fall within the category of 'common knowledge' and are therefore proper subjects for judicial notice")."[4] John cites specifically to Indiana statute 35-38-9-1 in his declaration. The Court need not rely on John's statement, it can rely on the statute he cites, Indiana Code 35-38-9-1, which defines the procedure to obtain an expungement and its effect. Subsection 10 proscribes unlawful discrimination against a person whose record has been expunged. As John stated, the statute reads: a "person whose record is expunged shall be treated as if the person had never been convicted of the offense." I.C. 35-38-9-1-10(e). Accordingly, the information contained in John's declaration is admissible.

*Paragraph 7*: [My sister] likewise stated it was not possible for me to have engaged in the alleged offense conduct."

John acknowledges this summary of his sister's testimony from the IU hearing transcript that IU relied on in support of its motion to dismiss is inadmissible hearsay.

---

John without any admission of guilt and he is now free to testify without fear that his words would be used in a prosecution against him.

[3] Notwithstanding IU's belief in John's guilt, there should be no dispute about John's innocence based on this record. IU offered no evidence of guilt and the hearing commissioners had no factual basis on which to find him responsible. As the Court held, "an arrest warrant alone is not an instrument by which the commissioners could have independently evaluated Jane's credibility." Order on Defendants' Motion to Dismiss at 15-16 (ECF No. 58).

[4] *Demos. v. City of Indianapolis*, 302 F.3d 698, 706 (7th Cir. 2002).

PAGE 3—RESPONSE TO DEFENDANTS' MOTION TO STRIKE EVIDENCE

*Paragraph 8*: "The hearing commissioners appear to have relied largely, if not exclusively, on the fact of my now-expunged arrest in finding me responsible for sexual misconduct."

Defendants lack a basis for objection to this statement by John. For, John makes this assertion based on his *personal knowledge* of the evidence presented at the disciplinary hearing and conversely the evidence that was not presented. IU offered no witnesses nor documentary evidence at the hearing. Minutes before the hearing began, IU permitted John to review his slim case file.[5] John's file consisted primarily of the University's correspondence with John as well as the public docket from his criminal case.[6] Since the only witnesses to testify at the hearing were John and his sister, both of whom offered exculpatory testimony, he logically concludes the hearing commissioners had only the fact of his arrest as the basis to find him responsible for sexual misconduct.[7] Thus, John's statement of the evidence the commissioners relied on is admissible because it is based on personal knowledge of the evidence presented. It is not a matter of the weight the commissioners placed on facts presented, as defendants wrongly argue. Rather, it is a matter of the facts available for the commissioners' consideration.[8]

*Paragraph 12*: "Though it has been my intent and wish to complete my undergraduate education at IU, in an effort to mitigate the damages stemming from a prolonged gap in my education, I sought admission to Purdue."

Contrary to defendants' claims, John is not offering a legal conclusion about his damages. He is acknowledging a fact that is easily understood and recognized by any lay person: that an extended absence from his academic studies and pursuits damages or impairs his educational and career prospects. John knows that he would have to explain a lengthy absence and also knows that delaying

---

[5] 2d Amend. Compl. at ¶ 73.
[6] *Id.*
[7] Defendants will argue the hearing commissioners found that inconsistencies in the testimony of John and his sister impaired their credibility. In the absence of testimony from the complainant, perceived inconsistencies that do not bear on the heart of the alleged offense conduct does not qualify as evidence of guilt.
[8] The Court has already determined, "an arrest warrant alone" is not enough to evaluate Jane's credibility and assess John's guilt. *Order* at 15 (ECF No. 58).

PAGE 4—RESPONSE TO DEFENDANTS' MOTION TO STRIKE EVIDENCE

his academic pursuits has lifelong consequences by delaying the start of his professional career. It takes no specialized knowledge or skill to understand this fact. Accordingly, his statement is admissible.

> *Paragraph 17*: "Ms. Spotts' declaration (which also contains a screenshot from IU's transcript database) confirms my belief that Purdue received a copy of my academic transcript."

Defendants incorrectly allege the foregoing statement is hearsay. This is because Spotts' declaration and (and the specific statement John cites to) are admissible under Fed. R. Evid. 801(d)(2) as an admission of party opponent.

> *Paragraph 18*: "As a result, I had no opportunity to explain the circumstances of the defective disciplinary hearing, which arose out of a now-expunged arrest record and which resulted in an erroneous and unsubstantiated finding of sexual misconduct."

Defendants' attempt to strike this statement lacks merit. This is partly because this Court has already determined that "John has sufficiently alleged that his hearing was procedurally defective because it was a 'sham'."[9] Further, as stated in footnote 6, above, the "arrest warrant alone is not an instrument by which the hearing commissioners could have independently evaluated Jane's credibility."[10] In this regard, John's statement that the disciplinary hearing resulted in an erroneous and unsubstantiated finding, is admissible. He makes these statements based on the legal conclusions of this Court. Essentially, John is simply paraphrasing the finding of this Court.

> *Paragraph 19*: In a letter dated April 3, 2020, Purdue explained that the Personal Conduct Committee, which is charged with determining whether an applicant poses a threat to the safety of the campus community, recommended that my application for admission be denied.

Defendants' objection to John's statement is unpersuasive. The Purdue denial letter, which is now included in the record, speaks for itself. John spoke in his declaration of the impact the letter had on him and his understanding of why he was not admitted. Defendants take issue with John's characterization that he was denied admission owing to personal conduct (i.e., behavioral) issues. By

---

[9] Order on Defendants' Motion to Dismiss at 17.
[10] *Id.* at 15.

PAGE 5—RESPONSE TO DEFENDANTS' MOTION TO STRIKE EVIDENCE

suggesting that perhaps it was an academic integrity issue. Either way it is a distinction without a difference. The fact is Purdue's *Personal Conduct Committee* weighed in indicating that Purdue evaluated his application based on *personal conduct* concerns (i.e., behavior, honesty or integrity). This happens when there is a concern about the student's behavior or conduct, whether by word or action. This was not a matter of Purdue denying John admission based on his academic record or standing, which is what defendants seem to imply.

Further, to argue John was denied admission because of demonstrated lack of academic integrity makes no sense because there has been no action against John for a lack of academic integrity (e.g., cheating or plagiarism.) Defendants' suggestion is a red herring and not supported by the record. There are no facts alleged, much less established, from which to infer that John was accused of a lack of academic integrity. In the end, the Purdue denial letter is admissible, and the Court can, on its own, interpret its content, evaluate its import and assess its relationship to the issue at hand.

> *Paragraph 20*: "Because Purdue never requested further information or explanation from me about the disciplinary proceeding resulting in my suspension, as best as I can ascertain, Purdue summarily rejected my application based solely on the damning and stigmatizing information contained on my academic transcript."

Contrary to defendants' allegations, John is not altering the factual basis of his complaint at summary judgment. His declaration is consistent with the allegations in his complaint and does nothing more than convert the most salient allegations therein to under oath statements to ensure the Court can consider as evidence facts relevant to its decision. John acknowledges that he cannot know precisely what Purdue was thinking when it denied him admission. He has reasonably concluded from the letter denying his admission that knowledge of a *personal conduct disciplinary action* resulting in his suspension was the basis for his rejection. He need not make any assumptions to come to this conclusion. Really, no other conclusion can be drawn from the text of his denial letter.

When John maintains that he was summarily rejected based on the stigmatizing information on his transcript, he is pointing out that (i) the Personal Conduct Committee weighed in because of a disciplinary suspension, and (ii) this information gave Purdue cause to reject him summarily, without further inquiry as to the specific details underlying disciplinary action. Purdue received this information first from John when he completed the application and, as required, answered all questions truthfully.[11] Purdue also received this information from IU because he was obligated to authorize IU to release his official academic transcript, which IU stamped with the disciplinary suspension. John could not complete his application or be considered for admission without doing these things.[12]

Defendants suggest that John contradicts his prior statements because where previously he has stated disclosing a disciplinary action in the application to Purdue, his declaration makes no mention of it.[13] Simply because John did not restate this in his declaration does not mean he denies this fact. It was true then and it is true today.[14] John is not, as defendants mistakenly assert, submitting a declaration that contradicts a previous statement.[15] Nor is he altering the factual basis of his complaint at summary judgment. His declaration was not an all-inclusive recitation of *all allegations* set forth in his complaint. Rather, it was a streamlined recitation of predicate facts leading to and bearing on Spotts' declaration.

---

[11] Memo in Opposition to Defendants' Motion to Dismiss Second Amended Complaint at 3-4 ("Opp. to Mot. to Dismiss") (ECF No. 66).
[12] Declaration of John Doe re: ECF No. 71 at ¶¶ 13-14. (ECF No. 72-1).
[13] Motion to Strike at 6.
[14] 2d Amend. Compl. at ¶¶ 112, 165.
[15] *Dilberti v. United Case*, 772 F.2d 1259, 1263 (7th Cir. 1987), is not relevant. As just noted, John's declaration does not contradict his complaint. It is simply limited to the central question of the information that was disclosed on his transcript. Second, *Dilberti* involved a party's improper use of an affidavit to contradict plain admissions in prior sworn testimony. Here, John's declaration is a reiteration of some (but not all) of the statements in his verified complaint—it neither contradicts nor supplants his prior statements.

PAGE 7—RESPONSE TO DEFENDANTS' MOTION TO STRIKE EVIDENCE

John previously explained in his complaint <u>and</u> in his brief in opposition to defendants' motion to dismiss, that the Purdue application *required* him to disclose whether he had ever been subject to a disciplinary action, which he did.[16] Therefore, the information before the Court as alleged in John's second amended complaint, as argued in his brief in opposition to defendants' motion to dismiss, and as presented in his declaration all amount to the same: an involuntary disclosure of stigmatizing information.

Lastly, John must respond to defendants' misplaced suggestion that his claim is somehow disingenuous because he is no longer resting on the allegation that IU shared the substance or contents of his disciplinary record. First, John made that allegation in good faith based on a fair and plausible reading of the letter he received from Purdue denying him admission.[17] It was not until the day his brief in opposition to defendants' motion to dismiss was due that he received the declaration from Libby Spotts attesting that IU did not share the contents of his file. This clarifying information, however, does not alter John's position that IU disclosed stigmatizing information when it sent his transcript to Purdue with the disciplinary suspension notation and it is on this fact he rests his claim.

DATED this April 26, 2021.

/s/ *Eric J. Rosenberg*
Eric J. Rosenberg (0069958)
205 S. Prospect Street
Granville, Ohio 43023
Telephone 740.644.1027
erosenberg@rosenbergball.com

---

[16] Opp. Mot. to Dismiss at 3-4.
[17] Memo in Opposition to Defendants' Motion to Dismiss Second Amended Complaint at 10-11. (ECF No. 66).

PAGE 8—RESPONSE TO DEFENDANTS' MOTION TO STRIKE EVIDENCE